IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTER BEST MITCHELL,**<br>**Individually and as the next best friend of**<br>**Cleveland McKinney, Jr.**<br>3714 Walters Lane<br>Forestville, MD 20747<br><br>    Plaintiff,<br><br>  v.<br><br>**Bannum, Inc.**<br>2565 Sunnydale Boulevard<br>Clearwater, Florida 33770<br><br>    Defendant. | *<br>*<br>*<br>*  Civil Action No.<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## COMPLAINT
(Wrongful Death Act; Survival Act; Civil Rights-Eighth Amendment-42 U.S.C. § 1983;
Negligent Supervision ; Negligent Infliction of Emotional Distress)

### INTRODUCTION

1. This is a civil action brought pursuant to 42 U.S.C. Section 1983 seeking damages against the defendant for committing acts under color of law which deprived plaintiff of rights secured under the Constitution and laws of the United States and the District of Columbia.

2. In addition, it is a civil action seeking damages against the defendant for intentional wrongdoing and acts of negligence under common law.

### JURISDICTION

3. Jurisdiction exists in this case pursuant to the Eighth and Fifth Amendments to the Constitution, and under 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343 and under D.C. Code § 11-921 (1981).

### PARTIES

4. Plaintiff, Ester Best Mitchell, was at all times relevant herein, a resident of the state of Maryland and is the mother of Cleveland McKinney, Jr., the decedent, and the personal representative of his estate.

5.      Defendant Bannum, Inc. ("Bannum") is a Kentucky Corporation with its principal place of business in Pinellas County, State of Florida at 2625 Sunnydale Blvd., Clearwater, Florida 33770. At all times relevant herein, Bannum operated a Community Corrections Center ("halfway house") in the District of Columbia at 2210 Adams Place, NE.

## STATEMENTS OF FACTS

6.      On or about June 29, 2005, the decedent, Cleveland McKinney, Jr., was a resident/inmate at the Bannum Place Facility in Northeast Washington, D.C. which is owned and operated by defendant Bannum. He had been transferred to this facility by the Bureau of Prisons ("BOP") in anticipation of his pending release from custody and reentry into society.

7.      Bannum operates approximately seventeen (17) Community Corrections Centers ("CCCs") throughout the United States pursuant to contracts with the BOP in several states throughout the country, including but not limited to Florida, North Carolina, South Carolina, West Virginia, Alabama, Mississippi, Georgia, Nevada, Texas and the District of Columbia.

8.      On or about March 24, 2000 and April 3, 2000, respectively, Bannum received Requests for Proposals ("RFP") No. 200-0593-MA and No. 200-06-04-MA, from the BOP for CCC services in the Washington, D.C. area. The RFPs called for a firm fixed-unit price requirements contract for said CCC services, and estimated a need for three hundred thirty (330) beds in total.

9.      In responding to said RFPs, Bannum formulated a "bid proposal" for submission to the BOP on a competitive basis against other government contractors, in which Bannum was required to find a suitable physical facility that, met, or after renovations would meet, all BOP requirements contained in the Statement of Work ("SOW") for the RFP, as well as stringent life-safety codes, applicable building codes for housing people, and local zoning requirements.

10.     Bannum proposed to lease a property located at 2210 Adams Place, NE, Washington, D.C. During October of 2000, Bannum began lease negotiations with the landlord for the use of the property in its proposal to be submitted to the BOP. Thereafter, on or about November 16, 2000, Bannum entered into a "Letter of Intent to Lease" with the landlord to secure the property if Bannum

were to be awarded the CCC contract, and eventually entered into a formal lease agreement with the landlord for the property.

11. In addition, Bannum began to meet with local officials in an effort to obtain zoning approval from the District of Columbia for the operation of a CCC. Specifically, Bannum representatives made several contacts, or attempts to contact, various D.C. officials and community leaders in the process of attempting to obtain the needed zoning approval.

12. On or about December 11, 2000, Bannum obtained zoning approval from the District of Columbia allowing Bannum to use the subject property at 2210 Adams Place, NE for the CCC contract.

13. On or about November 16, 2001, the BOP awarded the contract for CCC services to Bannum. Pursuant to the terms of the Contract, Bannum was to commence performance and operation of the CCC in 2003.

14. Bannum Place, the name given to the property at 2210 Adams Place, is located a few blocks from a shelter for troubled girls and across the street from a day care center for mentally retarded adults and has generated controversy since it obtained zoning approval.

15. Bannum moved in its first residents/inmates in May 2003. In September of that year, the D.C. zoning board noted to overturn the awarding of a building permit for the facility.

16. Bannum last filed corporate registration documents in 2002, and as of September 13, 2004, its status as a corporate entity registered to do business in the District of Columbia was revoked for failure to comply with District of Columbia law. Bannum's status remains unchanged, and was the same at the time plaintiff's decedent was shot and killed inside the confines of Bannum Place on June 29, 2005.

17. In April, 2005, the D.C. Department of Consumer and Regulatory Affairs ("DCRA")revoked Bannum's certificate of occupancy. At the time of the shooting death of plaintiff's decedent in June 2005, Bannum Place was an unlicensed facility operated by a corporate entity that was not legally registered to operate a business in the District of Columbia.

18. On June 29, 2005, plaintiff's decedent was shot and killed inside Bannum Place. The gunman was able to accomplish this murder because Bannum failed to have properly trained and/or supervised staff on duty and because there were no security measures in place with respect to entering and leaving the facility. In fact, upon information and brief, residents freely entered and exited the facility without restriction in the evening and nighttime.

19. Prior to the shooting death of plaintiff's decedent, Bannum knew that its staff was poorly trained and barely supervised; knew that there was no security in place with respect to entry and exit from the facility; and knew that there was little or no attention paid to the scrutiny of contraband coming into the facility.

20. Bannum's absence of security over this facility constituted gross negligence. Indeed, the defendant operated it's faculty in direct violation of D.C. law, and as such, should not have been authorized to opperate and house inmates at Bannum Place.

**COUNT I**
(Survival Act)

21. Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

22. Pursuant to the Survival Act, D.C. Code § 12-101, the decedent's right of action for wrongful and negligent conduct against defendants survives in favor of plaintiff Ester Best Mitchell, the personal representative of his estate. The plaintiff demands all damages recoverable under the Act including substantial damages for loss of future wages, medical expenses and conscious pain and suffering, as well as any other damages recoverable under the Act.

Wherefore, plaintiff demands judgment against defendant, in the full and fair amount of Five Million Dollars ($5,000,000.00) plus punitive damages to the extent allowed by law, interest and costs.

**COUNT II**
(Wrongful Death)

23. Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

24.	Plaintiff's claims under common law negligence are actionable under Wrongful Death Act, D.C. Code § 16-2701.

25.	As a direct result of the negligence or wrongful acts of the defendant, plaintiff and the next of kin of the decedent, incurred burial expenses, loss of the pecuniary value of services expected to be performed by the decedent and other damages recoverable under the Act.

Wherefore, plaintiff demands judgment against defendants, jointly and severally, in the full and fair amount of Five Million Dollars ($5,000,000.00) plus punitive damages to the extent allowed by law, interest and costs.

## COUNT III
( Deprivation of civil Rights; Eighth-Amendment-42 U.S.C. § 1983)

26.	Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

27.	The defendant, acting under color of law and with deliberate indifference to and reckless disregard for the safety and well-being of the residents/inmates transferred to Bannum Place and Cleveland McKinney, Jr., in particular, and in violation of 42 U.S.C. § 1983, did on or about June 29, 2005, allow to be committed acts which deprived Cleveland McKinney, Jr. of his constitutional rights against cruel and unusual punishment.

28.	As a direct and proximate result of the actions of the defendant, Cleveland McKinney,Jr., was viciously murdered by an unknown gunman inside of Bannum Place.

29.	As a further direct and proximate result of defendant's actions, Cleveland McKinney, Jr., prior to his death and during the attack that led to his death, suffered great physical pain and mental anguish.

WHEREFORE, the plaintiff demands judgement against the defendant, in the full and just amount of Two Million, Five Hundred Thousand Dollars ($2,500,000.00), plus punitive damages to the extent allowed by law, interest, and costs.

## COUNT IV
(Negligent Supervision)

30.	Plaintiff incorporates, by reference, paragraphs 1 through 20, as if fully set forth

herein.

31.   The defendants owed a duty of care to the residents/inmates transferred to Bannum Place including Cleveland McKinney, Jr., relative to their personal security and application of the District's policies and practices and those generally accepted under federal law and the American Correctional Association.

32.   The defendant breached their duty of care by failing to monitor and supervise their staff's activities and condoning conduct by its employees that violated the District's written policies, applicable court orders, the Constitution of the United States, and the generally accepted standards of the American Correctional Association.

33.   As a direct and proximate result of the defendants' negligent supervision of personnel at Bannum Place was viciously murdered within the confines of Bannum Place. At all times relevant herein, personnel at Bannum Place, who were defendant's agents, were acting under the direction and control of Bannum.

34.   The defendant acted negligently, carelessly and recklessly by failing to properly supervise the personnel at Barnum Place and by failing to properly train, supervise, control, direct and monitor their agents in their duties and responsibilities.

WHEREFORE, the plaintiff demands judgement against the defendant, in the full and just amount of Two Million, Five Hundred Thousand Dollars ($2,500,000.00), plus punitive damages to the extent allowed by law, interest, and costs.

## COUNT V
(Negligent Infliction of Emotional Distress)

35.   Plaintiff adopts and incorporates the allegations of complaint paragraphs 1 through 20 as if fully set forth herein.

36.   Defendant through its agents at Bannum Place, negligently caused severe emotional distress to Cleveland McKinney, Jr., through its negligent, reckless and indifferent conduct, including but not limited to allowing unauthorized contraband and individuals enter Bannum Place. Bannum's failure to control in any manner the proliferation of weapons and unauthorized individuals

in Bannum Place was the proximate cause of the decedent's death.

37. As a direct and proximate result of defendant's extremely negligent, reckless and indifferent conduct, Cleveland McKinney, Jr. Suffered severe pain, emotional distress, and mental anguish as he was being murdered at Bannum Place.

Wherefore, plaintiff demands judgment against defendant, in the full and fair amount of Two Million, Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages to the extent allowed by law, interest and costs.

                              Respectfully submitted,

                              Gregory L. Lattimer, [371926]
                              1100 H Street, N.W.
                              Suite 920
                              Washington, D.C. 20005
                              (202) 638-0095

                              Donald M. Temple [408749]
                              1229 15th Street, N.W.
                              Washington, D.C. 20005
                              (202) 628-1101

                              Attorney for the Plaintiff

By: _____
       Gregory L. Lattimer

Jury Trial Requested:

_____
Gregory L. Lattimer